**FARM BUREAU MUT. AUTO. INS. CO. v. SMOOT et al.**

**No. 1098.**

United States District Court
S. D. West Virginia.
Nov. 22, 1950.

5. Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318.

Kay, Casto & Amos, Robert H. C. Kay, and Edward H. Tiley, Jr., all of Charleston, W. Va., for plaintiff.

Kenneth K. Hall, Madison, W. Va., Salisbury, Hackney & Lopinsky, and John G. Hackney, all of Charleston, W. Va., for defendants.

BEN MOORE, Chief Judge.

The plaintiff in this action for a declaratory judgment is the insurer in a policy of automobile insurance issued to "James F. Smoot or Dennie Smoot," covering a Kaiser automobile. On March 6, 1950, James F. Smoot was driving this car, in which Dennie Ray Smoot and Ray Smoot were riding. An accident occurred involving the Kaiser car and another automobile.

James F. Smoot was killed and Dennie Ray Smoot and Ray Smoot were injured.

Dennie Ray Smoot and Ray Smoot, by separate actions in the Circuit Court of Boone County, West Virginia, are attempting to recover damages from Dennie Smoot as one of several joint defendants. They also threaten to bring actions against the estate of James F. Smoot. Dennie Smoot has called upon plaintiff to defend these actions.

Plaintiff contends it is not obligated to defend any of these actions, pending or threatened. Its contention is based on the ground that the injured persons were at the time of the accident employees of Dennie Smoot, engaged in their employment, and that the accident is therefore excluded from coverage by the terms of the policy.

The case is now before the Court on motions of both plaintiff and defendants for summary judgment. The facts are as follows:

Dennie Smoot is the father of James F. Smoot and Dennie Ray Smoot and the brother-in-law of Ray Smoot. Dennie Smoot's two sons lived with their father at his residence in Madison, Boone County, West Virginia, while Ray Smoot lived a short distance away. At the time of the accident Dennie Smoot was engaged in the business of plastering contractor, a business which he had followed for some years. Among his employees were his two sons, James F. and Dennie Ray, and his brother-in-law, Ray.

Dennie Smoot prior to June, 1949, owned a Buick automobile, but this car alone was evidently not sufficient for the needs of the family. The two sons, James F. and Dennie Ray, persuaded their father to buy them a Kaiser "Traveler" automobile and pay the down payment, with the arrangement that the sons would pay the deferred installments. Dennie Smoot, having been told by someone that because his son, Dennie Ray, was not yet 21 years old he could not take title to the Kaiser automobile in his name, had the title made to himself and the other son, James F. Smoot. Dennie Smoot made the cash payment of $769.00. Subsequently, his sons jointly paid nine monthly deferred installments amounting to

$105.01 each, or a total of $945.09. Dennie Ray Smoot became 21 years of age in December, 1949, and it was his father's intention to complete the gift of a one-half interest in the car to him at that time; but he neglected to do so and at the time of the accident, in view of the West Virginia statute requiring a writing or delivery of possession outside the home where gifts of personal property are made from a father to a son living with him, there had been no completed gift to Dennie Ray Smoot. Code, 36-1-5.

The Kaiser "Traveler" automobile is built as a combination pleasure and utility automobile, being so arranged that the back seat folds over and a large space is provided in conjunction with the trunk space where tools and other articles may be carried. It was used by Dennie Smoot and his sons at times for pleasure and at other times for transporting the sons and other employees of Dennie Smoot, together with the tools of their trade, to and from the places where they worked as plasterers in the latter's business.

Plaintiff's evidence and affidavits tend to show that there was an arrangement between Dennie Smoot and his two sons whereby it was agreed and understood that as a part of their employment he would furnish them transportation to and from their work. Defendant has filed affidavits of Ray Smoot and Dennie Ray Smoot to the effect that transportation to and from work was not a term of employment, but that the transportation, while customarily furnished pursuant to an unwritten and unexpressed understanding, was considered merely a convenience and a gratuitous act, and was furnished as a friendly gesture rather than as a part of the consideration for their work.

■ The policy of insurance, which is in standard form, binds the company to pay all sums which the insured shall become legally obligated to pay as damages because of bodily injury and also to "defend any suit against the Insured alleging such injury, * * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * *" but the obligation to defend suits is limited to such

a suit "As respects the insurance afforded by the other terms of this policy * * *." Therefore, if the accident out of which the suits arise is not an accident which the policy insured against, the company is not obliged to defend the suits nor of course to pay the amount of any judgments recovered in such suits; and it has the right to a determination of its obligation by declaratory judgment when called upon to act on behalf of the insured.

The insurance policy contains the following exclusion, among others:

"This policy does not apply: * * * (d) under coverages F and G" (F being bodily injury liability) "to bodily injury to or sickness, disease or death of any employee of the Insured while engaged in the employment, other than domestic, of the Insured * * *."

■ There can be little argument against the proposition that the insurance policy protected James F. Smoot under coverage F with respect to any suit for bodily injury which might be brought by Dennie Ray Smoot or Ray Smoot. The policy was issued in the disjunctive to James F. Smoot *or* Dennie Smoot. Properly interpreted, this was a coverage afforded to either or each of the persons named. With reference to the rights and liabilities of insurer and insured the policy must be read as though it were two separate policies, one insuring James F. Smoot, and the other insuring Dennie Smoot. The fact that this is an unusual method of writing insurance does not relieve the insurer from its obligation to each person separately, since it elected to issue the policy in this manner, and therefore is bound by its terms.

■ It is contended by plaintiff that if the Court should decide from the evidence that the three Smoots were engaged in their employment at the time of the accident it must follow that the accident itself is entirely excluded from the coverage of the policy. This contention however can be sustained only insofar as it affects the liability of the company to Dennie Smoot. As we have said there are in effect two "insureds." The injured men were not in any sense employees of the insured James F. Smoot. If they have a valid claim for damages against his estate, it is not excluded from the coverage of the policy.

It is concluded therefore that as to plaintiff's liability to defend suits against the estate of James F. Smoot and to pay the amount of any judgment that may be rendered against the estate in such suits, not exceeding the policy limits, defendants' motion for summary judgment will be sustained and plaintiff's motion denied.

■ In considering the motion for summary judgment insofar as it affects plaintiff's obligations under that phase of the policy which insures Dennie Smoot against liability for bodily injuries, it must be remembered that there is some conflict in the testimony and affidavits submitted with the motions. Manifestly, if this conflict raises a substantial question which cannot be answered without appraising the testimony and deciding in favor of one side or the other, there can be no summary judgment. However, a summary judgment for plaintiff may be granted notwithstanding a conflict in the evidence if it appears on the basis of defendants' testimony and affidavits alone that James F. Smoot, Dennie Ray Smoot and Ray Smoot were engaged in their employment at the time of the accident, as plaintiff contends. In other words, if plasterers who, together with their tools, are customarily transported to and from their work by their employer in an automobile owned in part by their employer, gratuitously and as a matter of convenience, pursuant to an unwritten and unexpressed understanding, can be said as a matter of law to be engaged in their employment while thus going to and from work, then plaintiff's motion for summary judgment on this phase of the case should be granted. Otherwise, it should be denied.

■ The weight of authority is to the effect that an employee making use of transportation customarily and gratuitously furnished by the employer, in the absence of an express provision for same, is not acting in the course of his employment unless a duty to transport can be implied from the attendant circumstances in the contract of hiring. Konopka v. Jackson County Road Commission, 270 Mich. 174,

258 N.W. 429, 97 A.L.R. 552; In re Donovan, 217 Mass. 76, 104 N.E. 431. This duty may be implied where it is shown that the transportation was provided as an incident to procuring the services of an employee whose home is a great distance from the place of work. Johnson v. Ætna Casualty & Surety Co., 5 Cir., 104 F.2d 22; Southern States Mfg. Co. v. Wright, 146 Fla. 29, 200 So. 375. It may also be implied where the transportation provided by the employer is shown to have been a necessary incident to the employment because it was the only practical means by which the employee could travel to and from the place of work. Venho v. Ostrander Railway & Timber Co., 185 Wash. 138, 52 P.2d 1267; Lamm v. Silver Falls Timber Co., 133 Or. 468, 277 P. 91, 286 P. 527, rehearing denied, 133 Or. 524, 291 P. 375, appeal denied, 282 U.S. 812, 51 S.Ct. 214, 75 L.Ed. 727. At any rate, it must be shown that the transportation so furnished was a necessary incident of the employment rather than a mere favor not in furtherance of the employer's business. American Mutual Liability Ins. Co. v. Curry, 187 Ga. 342, 200 S.E. 150; Morucci v. Susquehanna Collieries Co., 297 Pa. 508, 147 A. 533.

The State of New Jersey is the only jurisdiction, so far as I have discovered, in which support may be found for the proposition that, taking as true the substance of defendants' affidavits, the employees in this case were acting in the course of their employment at the time of the accident. See Rubeo v. Arthur McMullen Co., 118 N.J.L. 530, 193 A. 797, affirmed 120 N.J.L. 182, 198 A. 843; Alberta Contracting Corp. v. Santomassimo, 107 N.J.L. 7, 150 A. 830. These two cases hold that an accident occurring while an employee is being transported to or from work in his employer's conveyance arises in the course of his employment even though the furnishing of that transportation is merely a practice grounded in mutual convenience and benefit to employer and employee. It should be noted, however, that it was recognized in the Rubeo case that the circumstances of the transportation clearly showed its furnishing to be in furtherance of the employer's business, while in the Alberta Contracting Corporation case the transportation furnished by the employer was the only means of getting to and from the place of work.

I am of opinion that sounder reasoning is shown in those cases which require that the circumstances surrounding the customarily furnished transportation must afford a basis for the inference that it is a term of the contract of employment. Such an inference is not warranted by the facts as set out in defendants' affidavits. I will accordingly overrule plaintiff's motion for summary judgment on this phase of the case. Conversely, since plaintiff's affidavits are to the effect that the transportation was expressly made a part of the contract, I must overrule defendants' motion for summary judgment on the same point. For the purpose of determining whether the furnishing of transportation by Dennie Smoot was done pursuant to a mere gratuitous custom or whether it was either expressly or impliedly made a part of the contract of hiring, the case will be set down for trial.

If on the hearing it is shown, under the principles above set out, that the employees were acting in the course of their employment at the time of the injury, then the insurance company by the exclusionary provision of the policy has no obligations as to the suits pending against Dennie Smoot. If, on the other hand, it is concluded that the employees were not then within the course of their employment, it will be necessary for the insurance company to defend these actions. This is for the reason that the actions in the Circuit Court of Boone County proceed upon a different theory of liability from the employer-employee relationship, namely, the family purpose doctrine, which is given effect in West Virginia. (This fact does not appear from the pleadings and proof in the case at bar, but was mentioned and conceded in the oral argument on the motions.) Whether that doctrine is applicable to the facts as they may be developed on the trial of the Circuit Court actions, in view of the slight interest of Dennie Smoot in the ownership of the car and other circumstances, it is not within the province of this Court to de-

cide. That being the issue between the parties in that action, and not an issue between insurer and insured, principles of comity between courts require that the issue be left for decision to the Circuit Court.

An appropriate order may be entered in accordance herewith.